# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **RICKY LEE WHITLOW,** ) | |
| ) | |
| **Defendant/Movant,** ) | |
| ) | **Case Numbers:** |
| vs.   ) | **CR 01-S-369-J** |
| ) | **CV 05-S-8051-J** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION

This matter is before the court on the motion of Ricky Lee Whitlow (hereinafter "Whitlow" or "the defendant") to vacate, set aside, or correct his conviction and sentence filed pursuant to 28 U.S.C. § 2255. (Doc. no. 1).[1] Upon consideration, the motion is denied.

## BACKGROUND

Defendant was charged, together with three others, in a four-count indictment filed on August 30, 2001. Count One charged all four defendants with conspiring to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Count Two charged all defendants with attempting to manufacture methamphetamine in violation of the same statutes. Count Three charged only

---

[1]References to "Doc. no. ___" are to the documents as numbered by the Clerk of the Court in the court's record in this case.

defendant Ricky Lee Whitlow with carrying and possessing a 12-gauge shotgun, during and in relation to, and in furtherance of, a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).  Count Four charged a co-defendant with a violation of the same statute.

Defendant Whitlow entered a plea of "guilty" to the three charges against him on October 17, 2001.  He was sentenced on January 24, 2002, to 97 months of custody for the drug offenses (Counts One and Two), plus an additional 48 months consecutive on the gun charge in Count Three. (Doc. no. 72, at 2).  These sentences were below the Sentencing Guidelines range, because the court granted the government's motion for downward departure, based upon defendant's substantial assistance to law enforcement.  (Doc. no. 66).

The defendant did not appeal his conviction or sentences.  Defendant filed the present motion on June 15, 2005, more than three years and five months after sentencing.

Defendant asserts that:  he is actually innocent of the gun charge in Count Three; his trial counsel was ineffective in failing to investigate and properly advise him regarding the facts and law that applied to the § 924(c) gun charge; and, his sentences for the drug offenses in Counts One and Two exceed the statutory maximum and/or violate the Supreme Court's holding in *Apprendi v. New Jersey,* 530

U.S. 466 (2000).

The magistrate judge to whom this matter was initially assigned entered an order requiring the United States to appear and file a response to defendant's claims. The United States filed a response in the form of a motion to dismiss, asserting that defendant's motion is barred from review by the applicable statute of limitations. (Doc. no. 6, at 9). The government further contends that defendant is not "actually innocent" of the firearms conviction. (*Id*. at 13).

## DISCUSSION

### Statute of Limitations

The government initially contends that defendant's claims are procedurally precluded from review by the one-year statute of limitations codified at 28 U.S.C. § 2255, and reading, in pertinent part, as follows:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) *the date on which the judgment of conviction becomes final*;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral

> review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 (para. 6) (emphasis supplied).  Because there was no direct appeal in this case, defendant's judgment of conviction became final ten days after it was entered: that is, upon the expiration of the time for filing notice of appeal.  The judgment in this case was entered on January 25, 2002, and thus became final on February 5, 2002.  *See* FED. R. APP. P. 4(b)(1)(A).  The one year period in which to file a petition pursuant to § 2255 therefore began to run on that date, and ended on February 5, 2003.  The present motion was not filed until June 15, 2005, more than two years after the expiration of the applicable statute of limitations.  Accordingly, defendant's claims are barred from review absent a showing of actual innocence.

## Actual Innocence

The Supreme Court discussed the "actual innocence" standard in the context of a post-conviction challenge to a guilty plea that had been procedurally defaulted by failing to raise it on direct appeal in the case of *Bousley v. United States*, 523 U.S. 614 (1998), and said:

> Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice,"

> *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or that he is "actually innocent," *Murray*, 477 U.S., at 496; *Smith v. Murray*, 477 U.S. 527, 537 (1986).

*Bousley*, 523 U.S. at 622. The Court went on to say that, in order to establish "actual innocence," a petitioner must demonstrate "that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (in turn quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)) (internal quotation marks omitted). The *Bousley* Court also held that "'actual innocence' means factual innocence, not mere legal insufficiency." 523 U.S. at 623. Thus, "[i]n order to pass through the actual innocence gateway, a petitioner's case must be truly extraordinary." *Schlup*, 513 U.S. 327 (citation and internal quotation marks omitted).

**Analysis**

In support of his claim of actual innocence, defendant first asserts that the weapon forming the basis of the offense charged in Count Three of the indictment was not possessed by him "in furtherance of" either of the drug offenses charged in Counts One and Two. (Doc. No. 1, at 7). Specifically, he states that law enforcement officers entered the outbuilding where the gun was located at about 2:00 a.m., but the weapon was not found until nine hours after his arrest, and that it "was not in close

5

proximity [to] the drugs." (*Id*.). Additionally, he asserts that it was "an old shot-gun, rather than a piece of pipe as originally assumed." (*Id*. at 8). Defendant next states that there was no evidence of any "drug deal actively under way at the time of the execution of the warrant. There was never an allegation that anyone on the premises went for the gun, or even mentioned the gun, and neither the drugs or the gun were in close proximity to one another." (*Id*.). Defendant also asserts that DEA Special Agent Fred Gasbarro told him "that he did not feel as though the firearm was in any way related to the instant offense, and that it was[,] in so many words, coincidental to the drug trafficking crime that was the subject of the warrant. The weapon was not even in plain sight." (*Id*.). Finally, defendant says that his plea was involuntary, because "neither Whitlow, the Assistant United States Attorney, defense counsel, or the court, fully understood the elements of the § 924(c) offense." (*Id*. at 11-12).

The defendant relies, in part, upon the decision of the Eleventh Circuit in *United States v. Timmons*, 283 F.3d 1246 (11th Cir. 2002). Defendant reads *Timmons* as holding that, "in order to sustain a conviction under § 924(c), the government must have sufficient evidence on both the 'uses or carries' prong, and the 'during and relation to' prong." (Motion at 8 (citing *Timmons*, 283 F.3d at 1250)).

In *Timmons*, the defendant was convicted on two firearms counts involving controlled substances. In the first instance, the jury found him guilty of "using" and

"carrying" a firearm "during and in relation to" a drug trafficking crime in violation of § 924(c). The conviction was based on the fact that the defendant negotiated for the sale of a weapon and crack cocaine, both of which were delivered together to the undercover officer. Affirming the conviction on this charge, the court quoted *Smith v. United States*, 508 U.S. 223 (1993), which defined the phrase "in relation to" as requiring "that the firearm . . . have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Timmons*, 283 F.3d at 1251 (quoting *Smith*, 508 U.S. at 238). The Eleventh Circuit further noted that the Supreme Court's decision in *Smith* construed the phrase "in relation to" as being "expansive." *Id*. (quoting *Smith*, 508 U.S. at 237). Applying *Smith* to the facts presented in *Timmons*, the Eleventh Circuit said:

> In this case, the evidence demonstrates that the gun was not there "coincidentally," nor was "entirely unrelated" to the drug crime. If the gun did not facilitate the drug offense, it certainly had the "potential of facilitating" the drug offense. The evidence revealed that on the morning of October 23, 1998, the undercover officers and Timmons finalized the negotiations for the gun by determining that it was still available and that Timmons would sell it that day, and then proceeded to arrange for the sale of $200 worth of crack cocaine. Timmons brought the gun and the drugs together to the officers in a shoe-box. If indeed the purpose of the statute is to combat the dangerous combination of drugs and guns, as *Muscarello* [*v. United States*, 524 U.S. 125 (1998)] held, and Timmons combined the drugs and gun in a single shoe-box in what essentially amounts to a single transaction, as the jury found, it would flout the purpose of the statute to hold anything but that the gun was carried "during and in relation" to the drug offense.

*Timmons*, 283 F.3d at 1251-52.

The jury in *Timmons* also found the defendant guilty of possessing a firearm "in furtherance of" a drug trafficking crime. The evidence established that law enforcement agents obtained warrants to arrest Timmons, and to search his apartment. The defendant was arrested as he was standing outside, between the entrances to his apartment and the apartment next door. When the agents executed the search warrant, they found a stove top oven in the living room. On top of the oven were two fully loaded firearms. Inside the oven was an empty ammunition box of 9 mm cartridges. In a closet next to the living room, agents found a bullet-proof vest. In addition, agents found almost 36 grams of crack cocaine and $350 in cash. After the jury convicted the defendant, the trial court granted the defendant's motion for judgment of acquittal, finding this evidence insufficient to establish that these firearms had been possessed "'in furtherance' of a drug trafficking crime." *Timmons*, 283 F.3d at 1248. The government appealed and the Eleventh Circuit reversed, directing the trial court to reinstate the jury's verdict. The Court held that "'furtherance' should be given its plain meaning," that is, "a helping forward." *Id*. at 1252. Additionally, the Court stated that

> the plain meaning of § 924(c), uncontradicted by the accompanying legislative intent, dictates that the presence of a gun within the defendant's dominion and control during a drug trafficking offense is

> not sufficient by itself to sustain a § 924(c) conviction. As the Second Circuit explained in *United States v. Finley*, 245 F.3d 199, 202 (2d Cir. 2001), there must be "a showing of some nexus between the firearm and the drug selling operation." *Id.* The nexus between the gun and the drug operation can be established by "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." *Ceballos-Torres*, 218 F.3d at 414-15; *accord Mackey*, 265 F.3d at 462. While these factors are not exclusive, they "distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id*.

*Timmons*, 283 F.3d at 1253. The Court concluded that the evidence was sufficient for the jury to have found that Timmons was guilty of possessing the firearms "in furtherance of" a drug trafficking offense. *Id*.

At the plea hearing in this case, the Assistant United States Attorney made the following statements when reciting the factual basis for defendant's pleas:

> If this case were to go to trial, the Government would expect to prove that on August 8th, 2001, at approximately 2:15 in the morning, a citizen in Walker County contacted local law enforcement complaining about the smell of ether near the vicinity of Mr. Whitlow's residence.
>
> Officers arrived on the scene, and contacted someone in that residence who provided a written consent to search that residence and outbuildings. The officers also noticed the smell of ether.
>
> Pursuant to the search, the officers entered an outbuilding which was behind Mr. Whitlow's residence. Inside the outbuilding were Mr. Whitlow, Mr. Ward, Mr. Yarborough, and Mr. Humber. Also in the

outbuilding was an operational and in-production methamphetamine laboratory.

Also discovered in the outbuilding was a 12-gauge shotgun, as described in the indictment. And pursuant to a search of the residence based on consent, they discovered Mr. Whitlow's girlfriend had purchased that shotgun, with Mr. Whitlow being the witness to that purchase.

DEA and the local law enforcement officers recovered several containers containing liquid methamphetamine, pseudoephedrine liquid, empty bottles of tablets, new lithium batteries, used and peeled lithium batteries, a nearly-full 30-gallon tank of anhydrous ammonia, 30 full cans of ether, numerous empty cans of ether, denatured alcohol, sulfuric acid, glassware, and other methamphetamine-manufacturing equipment. The law enforcement also discovered 60 empty boxes of pseudoephedrine tablets, 24 tablets per pack, there at Mr. Whitlow's residence.

Upon interviewing the defendants — they started with Mr. Whitlow — Mr. Whitlow indicated that it was his role to supply the place of manufacture and the anhydrous ammonia. Mr. Whitlow had been advised of *Miranda* before he gave his statement to DEA agents.

And that Mr. Ward and Mr. Yarborough brought a certain quantity of pseudoephedrine powder for the cook. And that the parties were going to split the amount of finished methamphetamine three ways.

This is consistent with the glassware, which the law enforcement recovered, showing that they had several cooks, and that the amount appeared to be divided. He stated that Mr. Humber was there to help, and he did help with the glassware.

Mr. Whitlow also told law enforcement that he had cooked approximately four other times with Mr. Ward and Mr. Yarborough, and they had assisted in providing equipment or products for the production.

> Mr. Ward was also interviewed. He indicated that he had brought approximately 120 grams of pseudoephedrine powder to the cook, and that Mr. Yarborough had brought approximately the same amount. This was consistent with Mr. Whitlow's statement.
>
> Mr. Humber stated that he was also present there and that he had observed the parties engaged in the cook, and that he was aware that they had cooked on prior occasions.
>
> With regard to Mr. Ward and Mr. Yarborough, the Government would also present the testimony of Mr. Whitlow with regard to Mr. Ward. Whitlow and Ward — let me see if I can state this concisely.
>
> The Government believes that it would present the testimony at trial of the co-defendants against the individual defendants, and that they would testify consistently with the facts as I have outlined them here.
>
> All of this occurred in the Northern District of Alabama in Walker County.

(Plea Tr. at 64-67). Defendant admitted that the foregoing recitation of facts was substantially correct (*id.* at 67).

Under the circumstances, the court cannot find that this case is within that "truly extraordinary" category of instances showing actual innocence. The defendant's assertions that nine hours elapsed between his arrest and the time when DEA agents discovered the weapon, and that it was not loaded when found — even if true — do not demonstrate actual innocence. Similarly, the fact that the weapon may have been "an old shotgun" does not change the fact that its presence at the lab

11

site violated federal law. Defendant's conclusory assertion that there was no "drug deal actively under way at the time of the execution of the warrant" also is unavailing. To the contrary, the facts admitted at the plea hearing demonstrate that the weapon was present at an operational methamphetamine lab site.

This court also disagrees with defendant's assertion that he is innocent because DEA Special Agent Gasbarro allegedly said the weapon was "coincidental" to the drug offenses. As cited above, what the law requires is a nexus between the firearm and the drug operation. Although the United States must show more than mere possession of a firearm to sustain a conviction under § 924(c)(1), the defendant is entitled to no relief under the circumstances of this case. The record is adequate to support defendant's conviction. He was shown to have been involved in the manufacture of methamphetamine in an outbuilding behind his residence. The shotgun was located in the same building in which the methamphetamine was being manufactured. The defendant was present when his girlfriend purchased the gun. Accordingly, the court finds that he has not demonstrated the requisite actual innocence or prejudice to warrant further consideration. This is not an instance in which an otherwise innocent person is simply in "possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Timmons*, 283 F.3d at

1253.[2]

## Ineffective Assistance of Counsel

The defendant next asserts that his trial attorney was ineffective because counsel "failed to learn the facts of Whitlow's case and to familiarize himself with the law in relation to the plea." (Motion at 16). Specifically, he asserts that "counsel did not understand the elements of the offense and that he failed to realize the importance of the exculpatory evidence he possessed." (*Id.*). These allegations relate to the substantive § 924(c) claim addressed above.

To succeed on a claim of ineffective assistance of counsel, the defendant must prove both that his counsel's performance was deficient, and, that the deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Specifically, the defendant must show that identified acts or omissions of counsel fell below an objective standard of reasonableness, and that his counsel's alleged errors or omissions resulted in prejudice to defendant to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome would have been different. "[T]o satisfy the 'prejudice' requirement, the

---

[2]In finding against the defendant, the court recognizes that the weapon was not loaded. That, however, does not change the ultimate conclusion. The presence of the weapon at the site constituted a threat to the safety of law enforcement and others who might enter the location. It easily could have been used by the defendant and his codefendants at any moment to ward off any unwanted visitors.

defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).

In analyzing counsel's conduct under the performance prong of *Strickland*, this court must presume that counsel's actions were reasonable. *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990). A "[d]efendant must prove deficient performance by a preponderance of competent evidence, and the standard is 'reasonableness under prevailing professional norms.'" *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303-04 (11th Cir. 2000) (citation and footnotes omitted). The Eleventh Circuit has described a defendant's burden with regard to the deficient performance prong of an ineffective assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:
>
> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately. . . . Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that *no competent counsel would have taken the action that his counsel did take*. . . .

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (italics in original and internal citations omitted).

The Eleventh Circuit also has described a defendant's burden in demonstrating that counsel's deficient performance prejudiced his case as a "high" hurdle, adding that it is not enough to show that some errors may have had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002). Instead, to succeed on the ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. As the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000).

The court finds that the performance of defendant's trial attorney was not deficient. The proffer of the United States at the plea hearing was sufficient as a matter of law to support defendant's plea on the firearms charge. Counsel was not ineffective. The arguments and contentions offered by defendant purportedly showing his innocence are insufficient. Additionally, to the extent the defendant

asserts that his girlfriend, Carolyn Carter, purchased and owned the shotgun, the court is not impressed. Ownership is not necessarily the critical factor in determining guilt on a § 924(c) offense. As discussed earlier, there are numerous considerations, and they sufficiently demonstrate defendant's guilt of the charged offense in this case. Thus, the court finds that counsel's performance was not deficient. Additionally, the court finds that the defendant was not prejudiced under the circumstances.

## Length of Sentence

The defendant's final argument is that his "sentence violates the principles set forth under *Apprendi*." (Doc. no. 1 at 23). Specifically, he states that *Apprendi*, 530 U.S. 466, and the more recent decisions of the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), preclude the use of enhancements under the Sentencing Guidelines that are based upon facts that have not been admitted by a defendant, or proven to a jury beyond a reasonable doubt. (*Id*. at 24).

However, the Eleventh Circuit has held that *Blakely* is not retroactive to cases on collateral review. *In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004). That Court also has held that the *Booker* decision does not apply to cases on collateral review. *See In re Anderson*, 396 F.3d 1336 (11th Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005). Lastly, in *In re Joshua*, 224 F.3d 1281, 1283 (11th Cir.

2000), the court held that the Supreme Court has not declared *Apprendi* to be retroactive to cases on collateral review. Accordingly, the defendant is entitled to no relief on this claim.

## CONCLUSION

Premised on the foregoing, Ricky Lee Whitlow's motion to vacate, set aside, or correct his sentence (doc. no. 1) is due to be denied. An appropriate order will be entered.

DONE this 22nd day of September, 2006.

_____
United States District Judge